## William E. Mikell v. Robert J. Rousseau et als

[183 A.2d 817]

May Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed July 19, 1962

Reargument Denied August 1, 1962

*Edmunds, Austin & Wick* for the petitioner.

*Leary & Leddy* and *Clarke A. Gravel* for Chittenden County Clerk.

*Lee E. Emerson* (*Austin T. Foster, of counsel*) for Orleans County Clerk and intervenors.

*O'Neill, Delany & Valente* and *Bloomer & Bloomer* for Rutland County Clerk.

*Charles J. Adams,* Attorney General, for the State.

**Shangraw, J.** The Constitution of the State of Vermont directs the General Assembly to make a new apportionment of the state senators to the several counties after the taking of each census of the United States, or after the taking of a special census by the State for apportionment purposes. Following the 1960 census, measures to accomplish this were introduced in the 1961 General Assembly, but the two branches failed to agree and reapportionment was not carried out. This litigation followed.

The action was brought by William E. Mikell, a citizen of Chittenden County, and took the form of a declaratory judgment proceeding asking that No. 2 of the Public Acts of 1941, now 17 V.S.A. §1881, be ruled unconstitutional as a basis for the election of state senators in 1962. The petition joined the clerks of Addison, Chittenden, Orleans, and Rutland counties, in their official capacities as parties. Austin T. Foster and Emory A. Hebard of Orleans County were granted leave to intervene. The chancellor was asked to enjoin the defendant county clerks from printing or distributing ballots and from carrying out other duties pertaining to the primary and general elections for state senators in 1962 until the General Assembly accomplished reapportionment.

The following decretal order was entered:

"UPON CONSIDERATION of the Findings of Fact filed in said cause on February 16, 1962, and the exhibits, it is hereby ADJUDGED, ORDERED and DECREED:

"1. That the apportionment of the thirty (30) Constitutional State Senators among the fourteen (14) Counties shall be as follows: Addison, 2; Bennington, 2; Caledonia, 2; *Chittenden,* 5; Essex, 1; Franklin, 2; Grand Isle, 1; Lamoille, 1; Orange, 1; Orleans, 2; *Rutland,* 3; Washington, 3; Windham, 2; Windsor, 3.

"2. That the Petitionees Robert J. Rousseau, as Clerk of Chittenden County Court, and Francis E. Cannon, as Clerk of Rutland County Court, each in his official capacity as such Clerk and each in his official capacity as Clerk of the respective Counties of Chittenden and Rutland, and their successors in such Office or Offices, be and each is hereby restrained and enjoined from causing to be printed and distributed written ballots of any kind or nature designed for use in a primary nomination contest for State Senator in the Counties of Chittenden and Rutland, or for use in the general election for State Senator in said Counties of Chittenden and Rutland for and during the calendar year 1962 or until such time as the General Assembly of the State of Vermont, by the enactment of necessary, proper and appropriate legislation, has apportioned the thirty (30) Constitutional State Senators in accordance with Paragraph One of this order, or until further order of Court.

"3. Said Clerks of Chittenden and Rutland County, Rousseau and Cannon, are further restrained and enjoined from issuing or delivering or from causing to be issued or delivered Certificates of Nomination or Election for a State Senator within and for their respective counties of Chittenden and Rutland to any person or persons until such time as the thirty (30) Constitutional State Senators shall have been apportioned in accordance with Paragraph One of this order or until further order of Court.

"Counsel has urged many mathematical methods of legislative apportionment. It is the Court's feeling that regardless of the name by which a method may be known or called, regardless of the use that may have been made of it in past decades, regardless of its historical significance, resort should not be had to such method if the use of it is to result in a malapportionment or a greater disparity of Senatorial representation rather than an apportionment 'as near as may be in ratio of population.'

"Petitioner's Petition is hereby dismissed as to Petitionee Alma F. Sherwin, Clerk of Addison County Court and Addison County, and Petitionee Bertha V. Miles, Clerk of Orleans County Court and Orleans County. . . ."

The decretal order released all the parties of taxable costs.

The right of the people of this state to fair representation in the Senate chambers is at stake in this litigation. It poses grave questions concerning every citizen's right to just and adequate representation in government under the state constitution. The jurisdiction in this case, and, since the handing down of *Baker* v. *Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), is beyond question. The capacity of the petitioner, as a citizen and voter of Chittenden County, to maintain the suit is not attacked.

The appellants challenge only one aspect of the facts of this controversy as stated by the chancellor. The defendant Rousseau assigns error in the failure of the court to specifically state the history of the constitutional process establishing the Senate and historical methods employed by the legislative branch in accomplishing the apportionment of the Senate in the period from 1850 to 1941.

■ The failure of the chancellor to comply with the appellants' requests to find the historical facts does not remove them from consideration. Constitutional history, though not controlling, is the constant and proper concern of all branches of government in testing the limits of authority and the nature of duties imposed by the fundamental law. If there was a shortage in the chancellor's failure to find as requested, the error, if any, was harmless.

The following table shows the official United States census figures for 1940, 1950 and 1960, and the number of persons represented per senator as apportioned under 17 V.S.A. §1881.

| County | 1940 Census | Population Per Senator | 1950 Census | Population Per Senator | 1960 Census | Population Per Senator |
|---|---|---|---|---|---|---|
| Addison | 17,944 | 8,972 | 19,442 | 9,721 | 20,076 | 10,038 |
| Bennington | 22,286 | 11,143 | 24,115 | 12,057 | 25,088 | 12,544 |
| Caledonia | 24,320 | 12,160 | 24,049 | 12,025 | 22,786 | 11,393 |
| Chittenden | 52,098 | 13,024 | 62,570 | 15,642 | 74,425 | 18,606 |
| Essex | 6,490 | 6,490 | 6,257 | 6,257 | 6,083 | 6,083 |
| Franklin | 29,601 | 14,800 | 29,894 | 14,947 | 29,474 | 14,737 |
| Grand Isle | 3,802 | 3,802 | 3,406 | 3,406 | 2,927 | 2,927 |
| Lamoille | 11,028 | 11,028 | 11,388 | 11,388 | 11,027 | 11,027 |
| Orange | 17,408 | 17,408 | 17,027 | 17,027 | 16,014 | 16,014 |
| Orleans | 21,718 | 10,859 | 21,190 | 10,595 | 20,143 | 10,071 |
| Rutland | 45,638 | 11,409 | 45,905 | 11,476 | 46,719 | 11,679 |
| Washington | 41,546 | 13,848 | 42,870 | 14,290 | 42,860 | 14,287 |
| Windham | 27,850 | 13,925 | 28,749 | 14,374 | 29,776 | 14,888 |
| Windsor | 37,862 | 12,620 | 40,885 | 13,628 | 42,483 | 14,161 |
| TOTAL | 359,231 | | 377,747 | | 389,881 | |

Following the 1940 United States census, the General Assembly passed the apportionment statute, No. 2 of the Public Acts of 1941. This statute has remained unchanged and provides:

"Counties may elect Senators as follows: Addison, two; Bennington, two; Caledonia, two; Chittenden, four; Essex, one; Franklin, two; Grand Isle, one; Lamoille, one; Orange, one; Orleans, two; Rutland, four; Washington, three; Windham, two; Windsor, three."

Between 1951 and 1961 the Vermont general assemblies have considered reapportionment bills, but have failed to enact any change in the 1941 apportionment. In the 1961 session of the General Assembly the House of Representatives and the Senate became deadlocked and the legislature adjourned without reapportioning the Senate.

The petitioner does not claim that the 1941 act was invalid at the time of its adoption. He contends, however, that the 1960 census shows such an increase in the number of inhabitants in Chittenden County, and changes in some other counties, as to entitle this county to a minimum of five or a maximum of six senators, as required by the Vermont Constitution. It is urged that in view of these changes, considered in the light of the constitutional mandate, the 1941 act now results in voting inequality and becomes unconstitutional. The petitioner also claims that the use of the 1941 Apportionment Act as a basis for the election of state senators in 1962, having in mind the 1960 official census, contravenes the Fourteenth Amendment of the United States Constitution.

Prior to 1836 the supreme legislative authority of the State was vested in a single House of Representatives. The House consisted of a representative from each town without regard to the number of inhabitants. To correct the resulting inequality and to partially remedy the deficiency in popular representation the Senate was established to afford county representation according to population. Vt. Constitution, 1793, Chap. II, sec. 3; Art. of Amend. III; Journal of Constitutional Convention of 1836, p. 58.

In applying the apportionment act of 1941 to the 1960 census the chancellor, findings Nos. 14 and 15, states:

"14. The allotment of Senators among the several counties provided by No. 2 of the Public Acts of 1941, fails to apportion thirty Senators to the several counties 'as near as may be in the ratio of population' as ascertained by the United States Census of 1960 in that:

a. In Addison County with two Senators, the population per Senator is: 10,038
In Chittenden County with four Senators, the population per Senator is: 18,606
In Orleans County with two Senators, the population per Senator is: 10,071

In Rutland County with four Senators, the population per Senator is: 11,679

b. Under No. 2 of the Public Acts of 1941, the greatest disparity in population per Senator is between Chittenden (18,606) and Addison (10,038) the disparity being: 8,568

c. A reapportionment allocating to Chittenden County five Senators and to Rutland County three Senators would result in population per Senator as follows:

| | |
|---|---|
| Addison | 10,038 |
| Chittenden | 14,885 |
| Orleans | 10,071 |
| Rutland | 15,573 |

d. Under such a reapportionment the greatest disparity in population per Senator would be between Rutland (15,573) and Addison (10,038). Said disparity would then be reduced to: 5,535

"15. The allotment of Senators among the several counties provided by No. 2 of the Public Acts of 1941, fails to apportion thirty Senators to the several counties, according to the population ascertained by the census of the United States in 1960, regard being always had to the counties having the largest fraction and each county being given at least one Senator."

The General Assembly, Legislature of the State of Vermont, is composed of the Senate and House of Representatives. Its members are elected biennially. Chapter II, Section 18 of the Vermont Constitution provides:

"The Senate shall be composed of thirty Senators, to be of the freemen of the county for which they are elected, respectively, who shall have attained the age of thirty years, and they shall be elected biennially by the freemen of each county respectively.

"The Senators shall be apportioned to the several counties, according to the population, as ascertained by the census taken under the authority of Congress in the year 1910, regard being always had, in such apportionment, to the counties having the largest fraction, and each county being given at least one Senator."

With the spirit and intent of the Vermont Constitution in mind, it becomes apparent that an apportionment of the Senate

cannot be effectuated on a strict or exact mathematical basis, by reason of the fact that the number of its members is limited to thirty, each county is entitled to at least one senator, and of course there can be no fraction of a senator.

The 1960 United States census was completed and available during the 1961 session of the legislature. Under Chapter II, Section 18 of the Vermont Constitution a reapportionment of the Vermont Senate should have been made on the basis of this census. It is undisputed that Chittenden County is under-represented in the Senate. The constitutional duty to reapportion is mandatory and cannot be discharged by inaction. It is now overdue.

As stated in *Asbury Park Press, Inc.* v. *Woolley,* 33 N.J. 1, 11, 161 A.2d 705, "Inaction which causes an apportionment act to have unequal and arbitrary effects through the State is just as much a denial of equality as if a positive statute had been passed to accomplish the result. In our view, such deprivation not only offends against the State Constitution but may very well deny equal protection of the laws in violation of the Fourteenth Amendment of the United States Constitution." See cases cited.

Chapter II, Section 18 of the Vermont Constitution un-equivocally states that "the legislature shall make a new apportion-ment of Senators to the several counties after the taking of each census of the United States . . ." We conceive this to mean that legislative action to reapportion was required by the Constitution at its first opportunity following the receipt of the 1960 census.

At this point we do not deem it necessary to pass upon the issue as to whether apportionment of the Vermont Senate under 17 V.S.A. §1881, in view of the 1960 census, violates the Fourteenth Amend-ment of the Federal Constitution. It is conceded that by reason of a shift in population in the State, reapportionment is required under the Vermont Constitution.

The language of the Vermont Constitution does not lend itself to mathematical formulas. We do not think it possible (or advisable if it were possible) to state a precise, inflexible and intractable formula for constitutional representation in the Vermont Senate. In *Baker* v. *Carr, supra,* the United States Supreme Court apparent-ly considered it unwise to formulate a precise test for determining

when a legislative apportionment violates the Constitution and remanded the case to the district court for a decision on its merits.

■ Our Constitution, Chapter II, Section 18 in part provides that the senatorial apportionment of thirty members be made "according to the population . . . regard always being had, in such apportionment, to the counties having the largest fraction . . ."

Section 37 of Chapter II of the Vermont Constitution contains the following express prohibition: The General Assembly "shall not have power to apportion the Senators to the several counties, otherwise than according to the population."

■ The constitutional concern is representation in the Senate according to population. The constitutional result is the one which achieves the least disparity in the number of persons represented by each senator. This is the whole purpose of popular representation and the function which the Senate is constitutionally designed to carry out. That part of the chancellor's decree in which he comments on mathematical methods of apportionment, and their past use, and their historical significance, is to the same effect.

■ The Constitution of this State does not permit the legislature to let the question of apportionment drift and remain unanswered. Failure on the part of the legislature to act in conformity with the Vermont Constitution presents a matter for judicial consideration.

■ Whether the apportionment ordered by the chancellor was numerically correct under the Constitution or not, the decretal order is in error because its language pre-empts legislative action. The duty of apportionment is legislative. This Court cannot control the deliberations of the General Assembly.

In the instant case we are not yet being called upon to test, by constitutional standards, an action of the legislature. The legislative branch has, as yet, failed to act. So long as time remains for performance, we cannot presume that once their duty has been called to their attention they will fail to carry it out. Each separate branch of the government—legislative, executive and judicial—is entitled to the respectful confidence that each will carry out its constitutional duty, at least until the passage of time makes evident that either or both are unwilling or unable to do so. Since this circum-

stance has not yet come to pass, the chancellor's decree is unwarranted.

We are not unmindful of the urgency of legislative action by reason of the impending primary and general elections. The Constitution requires that senators be elected on November 6, 1962. Vt. Const. Ch. II, §35. This constitutional mandate is equally binding on all branches of government and the electorate. There is sufficient time for the executive and judicial departments to act in concert to safeguard the rights of the electorate in this regard.

■ We appreciate the fact that it is exclusively within the discretion of the governor to call the General Assembly into special session. It is equally true that the courts cannot compel the legislature to enact an apportionment statute. Should the governor see fit to call a special session and the General Assembly enacts an apportionment in accord with the requirement of the Constitution, injunctive relief against the county clerks is not needed. Accordingly the injunction imposed by the chancellor is dissolved. However, this Court will retain jurisdiction to afford the parties such further relief as justice shall require.

*Decree vacated. 17 V.S.A. §1881, as authority for holding the 1962 elections, is declared to be unconstitutional, and of no force and effect. Jurisdiction of this cause is retained to afford the parties further relief, if justice requires.*

**Per Curiam.** Defendant Cannon has moved for reargument in this case. This defendant in his motion claims that this Court inadvertently failed to set forth the "controlling" language of Section 37 of Chapter II of the Vermont Constitution. It is self-evident from the opinion that this is not the case. The clause referred to was not overlooked. It was considered and specifically set forth in the opinion.

■ The dominant command of the Constitution is that "The Senators shall be apportioned to the several counties according to the population, . . ." This requirement appears in both Chapter II, Section 18, and Chapter II, Section 37. The phrase,—"regard being always had in such apportionment to the counties having the largest fraction," restates the command and requires the same result. Attention to the largest fraction is the equivalent to achieving the least disparity in representation.

This is not a time for ingenuity; it is a time to be fair. A just and constitutional apportionment will result if the legislature but applies the best of all tests: "By their fruits ye shall know them."

*Motion denied.*