**T. Garry BUCKLEY, Janette N. Berry, and James E. Fitzpatrick, Plaintiffs,**

v.

**Philip H. HOFF, Governor of Vermont, Howard E. Armstrong, Secretary of State of the State of Vermont, Samuel A. Parsons, as Town Clerk of the Town of Hubbardton, Virginia L'Eucyer, as County Clerk for the County of Grand Isle, Defendants,**

**Leroy E. Lawrence, Erma Puffer, Samuel A. Parsons, Austin T. Foster, Lawrence Franklin, John D. Masterton, Russell Holmes, Stoyan Christowe, Cornelius Granai and Roger L. MacBride, Defendants-Intervenors,**

**Harley Walter Kidder; Vermont League of Women Voters, Amici Curiae.**

Civ. A. No. 3653.

United States District Court
D. Vermont.

July 10, 1964.

A. Luke Crispe, Brattleboro, Vt., Joseph E. Frank, Richard H. Thomas, III, Burlington, Vt. for plaintiffs.

Charles E. Gibson, Jr., Atty. Gen., Chester S. Ketcham, Deputy Atty. Gen., for defendants Hoff and Armstrong.

Edmunds, Austin & Wick, Burlington, Vt., Hilton A. Wick, Burlington, Vt., of counsel, for defendant Parsons.

Harold C. Roberts, South Hero, Vt., for defendant L'Eucyer.

Hilton A. Wick, of Edmunds, Austin & Wick, Robert H. Erdmann, John T. Ewing, Burlington, Vt., Philip A. Kolvoord, Essex Junction, Vt., Austin T. Foster, Derby Line, Vt., for defendants-intervenors.

Harley Walter Kidder, Barre, amicus curiae, pro se.

Joseph A. McNamara, Burlington, Vt., for Vermont League of Women Voters, amicus curiae.

Before WATERMAN and SMITH, Circuit Judges, and ANDERSON, District Judge.

WATERMAN, Circuit Judge.

On January 22, 1963, the original plaintiffs, T. Garry Buckley, a resident, voter, and taxpayer of the Town of Ben-

nington in Bennington County, and Janette N. Berry, a resident, voter, and taxpayer of the Town of Brattleboro in Windham County, filed their complaint in their own behalf and on behalf of all other persons similarly situated challenging the apportionment of the General Assembly of the State of Vermont. The complaint alleged that by reason of the applicable provisions of the Vermont State Constitution and by reason of the General Assembly's latest Apportionment of State Senators Bill, adopted August 9, 1962,[1] pursuant to said Constitution and the decision interpreting its meaning handed down by the Supreme Court of Vermont on July 19, 1962, Mikell v. Rousseau, 123 Vt. 139, 183 A.2d 817, petitioners were denied an equal suffrage with more favorably situated inhabitants of the State and were deprived of the equal protection of the laws and of due process of law under the Fourteenth Amendment to the Constitution of the United States. They also alleged that the United States District Court had jurisdiction under the Civil Rights Act, 42 U.S.C. §§ 1983, 1988, and under 28 U.S.C. § 1343.

The complainants stated the Vermont General Assembly is composed of a Senate of 30 members and a House of Representatives of 246 members, and summarized the provisions of Chapter II, § 13 and Chapter II, § 18 of the Vermont Constitution, which provisions we set out herein in full:

"[§ 13. Town representation; vacancies]

"SECTION 13. In order that the freeman of the state may enjoy the benefit of election as equally as may be, each inhabited town in this state may, forever hereafter, hold elections therein and choose each one representative to represent them in the House of Representatives. Provided, however, that the General Assembly shall have the power to regulate by law the mode of filling all vacancies in the House of Representatives which shall happen by death, resignation or otherwise."

"[§ 18. Senators; number; qualification; apportionment]

"SECTION 18. The Senate shall be composed of thirty Senators, to be of the freemen of the county for which they are elected, respectively, who shall have attained the age of thirty years, and they shall be elected biennially by the freemen of each county respectively.

"The Senators shall be apportioned to the several counties, according to the population, as ascertained by the census taken under the authority of Congress in the year 1910, regard being always had, in such apportionment, to the counties having the largest fraction, and each county being given at least one Senator.

"The Legislature shall make a new apportionment of the Senators to the several counties, after the taking of each census of the United States, or after a census taken for the purpose of such apportionment, under the authority of this State, always regarding the above provisions of this section."

They set out in their complaint detailed population statistics of towns, cit-

---

1. V.S.A. Title 17, Chapter 33. Apportionment of State Senators.
 "§ 1881. Number to be elected
 "Counties may elect senators as follows: Addison, two; Bennington, two; Caledonia, two; Chittenden, five; Essex, one; Franklin, two; Grand Isle, one; Lamoille, one; Orange, one; Orleans, two; Rutland, three; Washington, three; Windham, two; Windsor, three."

This act amended former 17 V.S.A. § 1881 in that it granted Chittenden County five senators when that county previously had four, and took away one senator from Rutland County, reducing its representation from four senators to three.

The latest change in apportionment prior to this was made in 1941.

ies, and counties in the State[2] demonstrating how they claimed deprivation of their voting rights and requested that a three-judge district court be convened under 28 U.S.C. §§ 2281 and 2284.

The original defendants were Vermont's Governor, Lieutenant Governor, Secretary of State, Speaker of the House of Representatives, and one Ernest W. Gibson, III, as Chairman of a Joint Committee of the 1961 General Assembly charged with investigating and reporting to the 1963 General Assembly any suggested action relative to any reapportionment of the Houses.

Petitioners prayed that these defendants, who it was alleged had responsibilities relative to the conduct of free and fair elections, be enjoined from performing their duties, that the court declare, pursuant to 28 U.S.C. § 2201, that Chapter II, § 13, and Chapter II, § 18 of the State's Constitution are unconstitutional and invalid as violating the Constitution of the United States, and that

"[T]he Court enter an order causing the reapportionment of the Representatives and Senatorial Districts of the State of Vermont in accordance with the population of the State and the provisions of the Constitution of the State of Vermont which provides for free and equal election."

and

"That in the alternative, the Court enter an order directing the conduct of the next election of Representatives and Senators to the General Assembly of the State of Vermont to be on an at-large basis of all the people of the State of Vermont being entitled to vote for all Senators and all Representatives to the General Assembly."

The District of Vermont is a one-judge district and, inasmuch as his son was a named defendant in this action, United States District Judge Ernest W. Gibson, Jr. found it necessary to disqualify himself from participation in the litigation; the only other federal judge in active service resident in the district, U.S. Circuit Judge Sterry R. Waterman, was designated to act in place of Judge Gibson; and a three judge district court was convened composed of Judge Waterman, Circuit Judge J. Joseph Smith of the U. S. Court of Appeals for the Second Circuit, and U. S. District Judge Robert P. Anderson, Chief Judge of the District Court for the District of Connecticut.

Motions to dismiss were filed by the defendants, and a hearing thereon was held on April 2, 1963, resulting in the dismissal of the action as to the Lieutenant Governor, the Speaker of the House of Representatives, and legislator Ernest W. Gibson, III. Also, it appearing that the plaintiffs might lack standing to maintain, as to each of them personally, that they were invidiously discriminated against under Chapter II, § 18 and the Apportionment Bill of 1962, leave was requested by, and granted to, them to file an amended complaint and to summon as an additional defendant the County Clerk of Grand Isle County, a county entitled to one Senator although as of the 1960 U. S. Census having but 2,927 inhabitants.

Other interested citizens of the State, all of whom are members of the House of Representatives of the General Assembly, sought to intervene, their petition was granted, one of them, Samuel A. Parsons, the Town Clerk of the Town of Hubbardton, population 238, was joined by the petitioners as a party-defendant, and a resident, voter, and taxpayer of the City of Burlington, population 35,531, was added as an additional party plaintiff. The amended complaint was then filed and served, praying for the same sort of relief as originally sought but now seeking to restrain the Governor and the Secretary of State, the Town Clerk of Hubbardton and the County Clerk of Grand Isle County from complying with the provisions of the election laws relative to the conduct of elections

2. The 1960 United States Census was used, and without objection was also used by the witnesses and in the evidentiary exhibits.

for membership in the State Senate and House of Representatives [3] and further praying that the court hold unconstitutional, as violative of the Fourteenth Amendment of the United States Constitution, the amending provision of the Vermont State Constitution, Chapter II, § 68, the so-called "time-lock" provision, which reads as follows:

"[§ 68. Amending constitution]

"SECTION 68. At the fifth biennial session of the General Assembly of this State following that of A.D. 1910, and at the session thereof every tenth year thereafter, the Senate may, by a vote of two-thirds of its members, make proposals of amendment, to the Constitution of the State, which proposals of amendment, if concurred in by a majority of the members of the House of Representatives, shall be entered on the journals of the two Houses, and referred to the General Assembly then next to be chosen, and be published in the principal newspapers of the State; and if a majority of the members of the Senate and of the House of Representatives of the next following General Assembly shall respectively concur in the same proposals of amendment, or any of them, it shall be the duty of the General Assembly to submit the proposals of amendment so concurred in to a direct vote of the freemen of the State; and such of said proposals of amendment as shall receive a majority of the votes of the freemen voting thereon shall become a part of the Constitution of this State.

"The General Assembly shall direct the manner of voting by the people upon the proposed amendments, and enact all such laws as shall be necessary to procure a free and fair vote upon each amendment proposed, and to carry into effect all the provisions of this section."

On October 29–30, 1963, hearing was had on the merits of the amended complaint.[4]

At its inception one James Fitzpatrick, who had previously requested leave to intervene as a party plaintiff, was granted that leave, and the former complainant having withdrawn and there being

3. During the April 2 proceedings the court conducted an extensive informal, but reported, pre-trial proceeding so as to sharpen the issues and make any adjudication a meaningful one. Counsel fully cooperated. Answers to the amended complaint were filed by the end of May and the case set for hearing on July 23, 1963. At the request of petitioners' counsel, and upon stipulation, the hearing date was set over and October 29, 1963 was the date chosen.

In the amended complaint the prayers for injunctive relief read as follows:

"That the Court order and direct a reapportionment of the House of Representatives and State Senate of the State of Vermont in accordance with the present population of the State and said Order to provide that upon failure to comply with its provisions, the defendants be restrained and enjoined from engaging in any general election duties as granted to them by the laws of the State of Vermont and the Constitution of the State and that said restraining order remain in full force and effect until the Order directing reapportionment be complied with."
and
"That the Court in the alternative enter an order directing the conduct of the next election for Representative and Senator to the General Assembly of the State of Vermont to be on an at-large basis, of all the people of the State of Vermont and that the defendants be enjoined from furnishing or receiving forms for nominations, petitions, certificates of elections or holding of elections upon a town or county basis."
Also, there was a prayer that the Court retain jurisdiction "for such other and further relief as may be just, equitable and proper."

4. At the conclusion of the hearing, upon request of counsel, November 27, 1963 was fixed as the date when briefs and requested findings of fact were to be filed, and reply briefs and other material were to be filed by December 13. The time for such representations was later extended, after the transcript became available, to January 17, 1964.

no objection to the substitution, he was substituted as the complainant resident, voter, and taxpayer of the City of Burlington; and, though leave to intervene as parties was denied to applicants representing the Vermont League of Women Voters and to one Harley Walter Kidder, leave was granted them to file briefs as friends of the Court.

Seventy exhibits were admitted into evidence, which dealt with the historical bases for town unit representation in the State Legislature, with the history of changes in the composition of the Legislature from statehood to the present time, the geography and demography of the state, and matters of like import, and reflected most creditably upon the cooperative endeavors of counsel and litigants to assist the court in every way possible. Plaintiffs produced as witnesses Dr. Andrew E. Nuquist and Dr. Robert S. Babcock, long-time Political Science professors at the University of Vermont, who testified at great length in support of plaintiffs' claims and identified many of the plaintiffs' exhibits. Defendant Parson's testimony was also lengthy, and, drawing upon his many years as a town officer and as the representative from his town in the General Assembly, he sought to prove by his testimony the importance of the Vermont town in Vermont economic and political life, and to prove that the State Legislature, though heavily weighted in its membership in favor of the smaller communities of the state, was conscious of the needs of all the people of the state.

Evidence was uncontradicted that, contrary to the importance of counties in many states, counties in Vermont are unimportant administrative political subdivisions, and that the county's primary purpose is to serve as a judicial district.

The City of Burlington's representative in the Legislature was permitted to testify that it was his belief that certain defeated legislation at the last Term of the General Assembly would have passed if the Houses had been more equitably apportioned; and intervenor Foster testified, contrary to the testimony of Professor Nuquist, that, from his studies, it was his reasoned belief that the people could be summoned into a constitutional convention and the amending provision of the Vermont State Constitution set forth supra could be by-passed by having the members of the convention directly propose to the people amendments to the organic law of the state.

Much of this testimony and many of these exhibits,[5] in particular the evidence relating to the history of the state, have now become, at this stage of these proceedings, immaterial and irrelevant, for, within the month, the Supreme Court of the United States, speaking through Chief Justice Warren, has held that neither history, nor custom, nor tradition, nor heritage, provide rational bases for justifying the composition of a State Legislature if the membership of the Legislature is not fairly and equitably apportioned to the population of the state, and that in bicameral legislatures both Houses must be so apportioned. The Court held that:

"* * * as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a

5. For instance, Dr. Babcock, testifying for the plaintiffs, introduced into evidence Plaintiffs' Exhibit 5, a map setting forth suggested electoral units for a 150-member House. This exhibit is of little pertinence now. In his suggested House, majority control would have vested in representatives elected by only one-third of the State's population, and a House so constituted would not meet the standard set by the decision in Reynolds v. Sims (1964), 377 U.S. 533, 84 S.Ct. 1362, for compliance with the Equal Protection Clause of the Fourteenth Amendment.

It is also of interest that the plaintiffs briefed their case on the proposition that the Equal Protection Clause prevents a state from having a system of unit representation by which one legislator represents more than twice as many constituents as another. In view of the "substantially equal" standard announced subsequently in Reynolds v. Sims, supra, this was a conservative position.

population basis. Simply stated, an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State." Reynolds v. Sims (1964), 377 U.S. 533, 568, 84 S.Ct. 1362, 1385, 12 L.Ed.2d 506.

In the light of this standard so recently received we find that both Houses of the Vermont General Assembly are malapportioned.

At the outset it is clear that the House of Representatives is grossly malapportioned, and that citizens of the state's larger communities are invidiously discriminated against because of the inequality of representation that results from the provision of the Vermont Constitution that gives each "inhabited" or organized town or city in the state one representative. The one representative from the Town of Stratton represents but 38 people, yet has an equal vote with the one representative elected by the 35,531 people of the City of Burlington. 132,790 persons, more than one-third of the total population of the state of 389,-881 live in the cities of Burlington, Rutland, Barre, St. Albans, Montpelier and Winooski and the towns of Bennington, Brattleboro, Springfield and St. Johnsbury, which together have but a total of ten votes in a House of 246 members. When the population of twelve more municipalities, the City of Newport and the towns of Essex, South Burlington, Hartford, Rockingham, Middlebury, Colchester, Barre, Northfield, Windsor, Waterbury and Swanton, are added to the population of the ten municipalities just listed, one finds that in these 22 cities and towns more than one-half of the state's population, 195,692 people, reside —yet, far from having any comparable representation in the House they have but 22 of 246 representatives, or not quite 9% of the members of the House. These examples of invidious disparities could be multiplied by citing startling comparison after startling comparison, as, for instance, noting that the total

population of the ten least populated towns is 661 souls and that of the ten heaviest populated cities and towns is 132,790, or that the 2,322 inhabitants of the 22 least populated towns have equal representation in the House with the 195,692 persons residing in the 22 heaviest populated municipalities whose inhabitants total more than one-half of the state's population. Voters in 82 towns containing less than 475 inhabitants per town elect 82 House members, or one-third of the membership of the House, although one-third of the total population elects only 10 members, and voters in 124 towns with less than 700 inhabitants per town and less than 12% of the state's population elect a majority of that membership while a majority of the people of the state, over 50%, elect but 22. And, too, Burlington's one representative represents more people than the 107 representatives from the 107 smallest towns, none of which has a population in excess of 600.

The Vermont Senate is composed of thirty members, no more, no less, chosen on the basis of counties in proportion to their population, but with each county, irrespective of its population, guaranteed at least one of the thirty.

If the Senate were apportioned exactly according to the state's population of 389,881, each Senator would represent 12,996 persons, or 3⅓% of the state's population. The Vermont Senate, as of January 1962, ranked third among all the upper Houses of State Legislatures in representativeness (the percentage of the state's total population necessary to elect a majority of the members of the body), for a majority of the Senators represent 47% of the state's population. Even so, the Senate is malapportioned, for the one Senator from Grand Isle County represents but 2,927 persons, or ⁷⁄₁₀ of 1% of the state's people, whereas the one Senator from Orange County represents 16,014 people. Similarly, the one Senator from Essex County represents 6,083 people, or 1½% (.0156) of the population of the state. Under the state's Constitution, it is impossible to

apportion the Senate in any way which will not result in at least a 5–1 disparity between the largest and the smallest number of people represented per Senator. Inasmuch as the disparity caused by the representation of the two counties of Grand Isle and Essex causes the inhabitants of the 12 other counties to be invidiously under-represented, it follows that the Senate is malapportioned despite its high national ranking for overall representativeness. See, on this point, however, as to the unlikely constitutionality of this representativeness, Davis v. Mann (1964), 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609, in which the Supreme Court held that a legislative apportionment plan of the State of Virginia under which 41.1% of the population can elect a majority of the Upper House and 45% of the population can elect a majority of the Lower House violates the Equal Protection Clause.

■■ In view of the failure of the Legislature to vote to submit to the people proposed amendments to this State's organic law that would rectify these malapportionments, and the failure of the Legislature to take any permissible corrective legislative action, the plaintiffs had no other recourse except that of application to the courts. No initiative procedure is provided for under Vermont law. Therefore, we now turn to a consideration of the effect of the "time-lock" provisions in Section 68 of the Vermont Constitution, supra, and we hold that it does not restrain this Court from ordering that the Vermont General Assembly be reapportioned or restrain action by officers of the State to set in motion machinery to do so by any other means that would not be discriminatory under the Federal Constitution. We hold here that the Equal Protection Clause of the Fourteenth Amendment of the Federal Constitution is being violated by the present apportionment and "[w]hen there is an unavoidable conflict between the Federal and a State Constitution, the Supremacy Clause of course controls." Reynolds v. Sims, supra, 377 U.S. 533, 584, 84 S.Ct. 1362, 1393.

As we have stated earlier in this opinion, footnote 2, supra, plaintiffs have requested the Court that it not only declare that the present legislative apportionments violate the Equal Protection Clause, but that it also restrain election officers from proceeding with General Assembly elections until reapportionment is accomplished or order that the election of all 276 General Assemblymen be on a state-wide basis. At this point we should say and we find that defendant Virginia L'Eucyer is properly representative of all the County Clerks in the State and defendant Samuel A. Parsons is properly representative of all the Town and City Clerks in the State charged with election duties relative to the election of state legislators.

Should we adopt either of these alternatives we would act with great reluctance, for we realize that we would be acting in an area that is an unaccustomed one for judges. Moreover, we are very conscious of the well-known law abiding characteristics of the independent people of Vermont, and of the justified reputation that the State and its people enjoy for integrity, responsibility, and fairness when a course of action is required to be followed. Therefore, although we declare that both Houses of the General Assembly are so apportioned that their composition violates the equal protection of the laws to all voters in a most fundamental way, in that substantially equal representation is denied to all voters in the State in the State's deliberative law-making Assembly, we are constrained to delay adopting any remedy until counsel have had an opportunity to appear before us once again with suggested orders for our issuance.

It is our opinion that a reasonable opportunity should be afforded the legislative and executive officials of the state promptly to initiate the means for the voters of the State to effect an equitable legislative apportionment without the necessity of further action by the court. As of now we take the view that no progress has been made in this area since Baker v. Carr, 369 U.S. 186, 82 S.Ct.

691, 7 L.Ed.2d 663 (1962), despite the palpable injustice of not making progress, because of an understandable desire to await decisions of the United States Supreme Court in the pending cases that were disposed of by that Court on June 15 and June 22, as well as the decision of this Court in this case, and because of a sense of frustration due to the "time lock" provision relative to the frequency within which amendments to the State Constitution could be initiated.

 There is no excuse now for any further inaction. Within constitutional standards the people of the State should determine the framework and composition of the General Assembly, the number of its members, and the length of their terms of service, the qualifications for membership, the number, size and boundaries of electoral units, the number of legislators to be chosen from each unit—always having in mind that the seats in each house of a bicameral state legislature in order to meet the constitutional standard must be apportioned so as to provide substantially equal legislative representation for all citizens of all places within the state, and the weight of a citizen's vote cannot be made to depend on where he lives.

Accommodation by the people of Vermont to federal constitutional standards will require a reasonable space of time within which to work out the details of the proposals which will bring the Constitution of the State into conformity with the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

To bring about this needed conformity the officers of the State, executive and legislative, are, of course, empowered to act. The overturning of the state's traditional reliance upon the election to the lower House of the General Assembly of one Representative from each town in the State, each town as a town being an electoral unit, a traditional reliance which antedates the formation of our national Union and the admission of Vermont into it as the fourteenth state, as well as the tradition of having at least one Senator represent each county, the county being an electoral unit, could be most difficult to accomplish. The transition should be easier than otherwise, however, in view of the fact that not only the Chief Executive and the Secretary of State are parties litigant, but, in addition, ten members of the House of Representatives, which House we have declared to be apportioned in violation of the United States Constitution, are also, at their own request, parties litigant. As such litigants these influential persons are of course subject to the decrees, orders, and mandates of this Court, and we apprehend that the cooperation which the court has received to date from all parties will continue.

We are aware that persons seeking nominations for the Senate or for the House of Representatives at the September primary elections must file their petitions on or before July 29; and we realize that, upon good cause shown, we should consider the proximity of a forthcoming election and the mechanics and complexities of the State's election laws; and that, even though we have found that this General Assembly is invalidly apportioned, we are permitted to act equitably and in accord with general equitable principles to avoid too much sudden disruption of the State's political way of life.

Accordingly we will receive suggestions for decretal orders at a hearing to be held at the U.S. Court House in Brattleboro, Vermont, on the 22nd day of July at 10:30 A.M., and we shall expect counsel to propose and to consider appropriate decrees to execute the decision we have made, and unless the defendants and defendant intervenors choose to default in their duty to proceed with dispatch to correct the present malapportionments we shall expect from them the submission of a plan of action, with a suggested time-table for the plan's execution.

The foregoing opinion contains our findings of fact and conclusions of law, but we shall entertain suggestions for

further findings, if counsel care to request any, at the hearing on July 22.

Irrespective of what may be accomplished on July 22, we shall retain jurisdiction of the case, and we point out to counsel and those they represent that, as the Supreme Court of Vermont stated so well in Mikell v. Rousseau, supra, 123 Vt. 139, at 149, 183 A.2d 817, at 823: "This is not a time for ingenuity; it is a time to be fair."

## JUDGMENT

This cause having been heard October 29–30, 1963 on its merits; and the Court having filed an opinion July 10, 1964 embodying findings of fact and conclusions of law; and

The cause having been further heard July 22, 1964 on the judgment to be entered; it is

ORDERED, ADJUDGED AND DECREED:

■ (1) Chapter II, Section 18 of the Constitution of Vermont, which provides that the thirty Senators who compose the Vermont Senate shall be apportioned among the several counties of the State so that each county, irrespective of variances in the population of the counties, shall have at least one Senator, is in contravention of the equal protection clause of the Fourteenth Amendment of the United States Constitution and is declared to be unconstitutional and void, and

■ (2) Chapter II, Section 13 of the Constitution of Vermont, which provides that, irrespective of any variances in the population of the towns, each inhabited town in the State may elect one Representative to the House of Representatives, is in contravention of the equal protection clause of the Fourteenth Amendment of the United States Constitution and is declared to be unconstitutional and void, and

■ (3) Therefore, subject to the provisions hereinafter appearing, the injunction that plaintiffs have requested restraining the officers of the State and those of the counties, towns and cities charged with the conduct of the elections of members of the General Assembly from proceeding with elections pursuant to the present method of apportionment is granted; and the defendants Philip H. Hoff, Governor of Vermont, Howard E. Armstrong, Secretary of State, the Town Clerks of the Towns of Vermont, and the County Clerks of the Counties of Vermont, and their respective successors in office, are perpetually enjoined from doing any act or taking any steps in furtherance of nominating or holding elections of senators or representatives to the Senate or House of Representatives of the State of Vermont pursuant to said method, and said defendants are further enjoined from certifying or in any other manner declaring that the results of such nominations or elections are valid or that the General Assembly of the State of Vermont which, if constitutionally elected, would be convened on January 6, 1965, is properly or legally constituted, unless by some other authorized lawful and constitutional method Senators and Representatives are nominated and elected to the Senate and House of Representatives of the State of Vermont pursuant to a reapportionment or redistricting of the Senate and a reapportionment or redistricting of the House of Representatives to be effected promptly, such reapportionment or redistricting of the Senate and reapportionment or redistricting of the House of Representatives having been done in such manner as to achieve substantially equal weighting of the votes of all voters in the choice of members of the General Assembly as guaranteed by the equal protection clause of the Fourteenth Amendment of the United States Constitution. It is, however, permissible for the September 1964 primary elections for nominees for the offices of Senators and Representatives and for the general elections to be held on November 3, 1964 to be conducted as presently scheduled to be conducted, and if, in the meantime, no members shall have been chosen by a constitutionally valid method, the members of the Gener-

al Assembly chosen as heretofore may convene on January 6, 1965, provided that legislation shall be limited to the devising of a constitutional method of reapportionment and redistricting, and that the terms of said members shall expire on March 31, 1965.

(4) No action is taken now upon the alternative request of plaintiffs that this court order that elections of Senators and Representatives be on a state-wide basis; and jurisdiction is retained for the entry of such further orders as may be necessary and proper hereafter.