## In re Senate Bill 177

[294 A.2d 657]

No. 73-72

Present: Shangraw, C.J., Smith, Keyser and Daley, JJ.

Opinion Filed July 28, 1972

Motion for Reargument Denied August 16, 1972

*Philip H. Hoff,* and *Karen McAndrew* of *Wick, Dinse & Allen,* Burlington, for Petitioners.

*James M. Jeffords,* Attorney General and *Martin K. Miller,* Assistant Attorney General, for Petitionees.

**Per Curiam.** Responding to the petition in the above entitled matter challenging the reapportionment of the Senate of the General Assembly of the State of Vermont as provided for in Senate Bill 177, following argument before this Court, an opinion was rendered and filed July 13, 1972, wherein it was determined that Senate Bill 177 did not meet constitutional standards. 130 Vt. 358, 294 A.2d 653. The opinion was certified to the Legislative Apportionment Board with directions that the plan of reapportionment be modified in accordance with the views therein expressed and that the board's report be submitted to this Court not later than two weeks from the date of such mandate.

Jurisdiction of the cause was retained by this Court as provided for by 17 V.S.A. § 1909(e). The report and plan of the Legislative Apportionment Board was filed on the 26th day of July 1972, and reads as follows:

"PLAN OF LEGISLATIVE APPORTIONMENT BOARD

The Legislative Apportionment Board presents the following under and pursuant to the order of the Vermont

Supreme Court filed on July 13, 1972, in the above entitled cause for the apportionment of the Vermont Senate:

(1) The court retains jurisdiction over this cause;

(2) The court orders the next session of the Vermont General Assembly to reapportion the Vermont Senate according to law, including 17 V.S.A., Chapter 34A;

(3) The 1972 elections for Vermont Senators proceed in accordance with a plan for apportionment to be as follows—

| Senatorial District | Number of Senators |
| --- | --- |
| Addison County plus towns of Brandon and Pittsford | 2 |
| Bennington County | 2 |
| Caledonia County plus the towns of Newbury, Topsham, Orange and Corinth | 2 |
| Chittenden and Grand Isle Counties | 7 |
| Essex and Orleans Counties | 2 |
| Franklin County | 2 |
| Lamoille County | 1 |
| Orange County less towns of Newbury, Topsham, Orange and Corinth | 1 |
| Rutland County less towns of Brandon and Pittsford | 3 |
| Washington County | 3 |
| Windham County | 2 |
| Windsor County | 3 |

(4) The present view of the Board is that such plan as it may develop for further consideration by the Court or by the General Assembly for apportionment of the Vermont Senate from the end of its next session to the session to be held according to the 1980 apportionment, shall be on the basis of the establishment of single-senator districts wherever practicable."

The plan as submitted is lacking in unanimity as appears from the following dissents of three of its members which

were annexed to the report. One dissent is to the establishment of the Addison-Rutland Senatorial Districts. A second dissent is to the establishment of the Caledonia-Orange Senatorial Districts. The chairman of the board dissented in two aspects of the Plan submitted to this Court as follows:

"First, it is my view that while the Court has ordered the Board to prepare and present a plan to it by July 27, 1972, it has not, by that order, indicated that the plan must become effective in advance of the 1973 session of the Legislature nor that it be effective for that session. Time is thereby afforded to the Board during which it might conduct additional and more extensive hearings and carry out further and other investigations of the necessary factual background whereby the assignment of Senators on an equal-representation basis might be more satisfactorilly (sic) and properly made. A plan so developed might very well become law under 17 V.S.A. 1909 (e) in time for a special election to be held for purposes of electing members of the Senate for the 1973 session.

Secondly, I do not agree that county lines should be breached simply for purposes of obtaining a more satisfactory mathematical result to be embodied in a temporary plan. If and where and when districts must be established in lieu of counties for purposes of senatorial representation, decisions in that regard should be made only after more extensive fact-finding and opinion-gathering activities have been carried on by the Board."

Further, in his letter of transmittal, the chairman wrote as follows:

"Comments heard at the hearing included proposals for single senator districts, multi-senator districts, a combination of those two types of districts, objections to the suggestion of the Supreme Court for apportioning the Senate which was included in its recent opinion, desires for hearings at various places in the state to be

conducted by the Legislative Apportionment Board, desires for delaying the finalizing of apportionment plans and concerns for what many persons characterized as disenfranchisement and lack of communication or responsibilities which might result from apportioning the Senate through or by the assignment of a number of senators to larger areas."

From the foregoing it becomes apparent that we, at least for the time being, are confronted with one of two choices. First, accept the plan of the board for the sole and limited purpose under which the 1972 Senate election is to be held, or, secondly, permit the election to proceed under the plan set forth in S. 177. S. 177 reads as follows:

"Counties may elect senators as follows: Addison, two; Bennington, two; Caledonia, two; Chittenden, six; Essex and Orleans combined, two; Franklin and Grand Isle combined, two; Lamoille, one; Orange, one; Rutland, four; Washington, three; Windham, two; Windsor, three."

In the opinion of this Court filed on July 13, 1972, we realized the press of time would make it difficult for the board to develop a plan which could be implemented in an orderly fashion in time for this year's senatorial elections. For this reason we suggested to the board it consider reducing the membership of the Senate by one while creating senatorial districts observing the established county lines which would have resulted in a minimal disruption of our electoral process already under way. *In Re: Senate Bill 177*, 130 Vt. 358, 294 A.2d 653 (1972).

The tentative plan submitted to this Court by the Legislative Apportionment Board envisions the creation of senatorial districts not following county lines, but, in addition, it sets up senatorial districts following county lines. Given the meager time left for candidates for the Vermont Senate to file their petitions for the primary election, a major departure from county lines at this particular juncture is such a drastic measure that it would only serve to work a hardship upon the candidates and upon the public which has such a short

time to identify and formulate opinions about those candidates in their district.

■ Upon further review of the board's plan it is apparent that the population per senator varies from 13.68% over represented to 11.65% under represented. The ratio between the largest and smallest district is 1.29 to 1, an unacceptable percentage under recent federal decisions. *Swann* v. *Adams*, 385 U.S. 440 (1967) ; *Cummings* v. *Meskill*, 341 F.Supp. 139 (D. Conn. 1972). Because of the population variances of the size and significance evident here the board's plan does not meet constitutional standards.

■ Thus, this Court is faced with an impending election, and the selection between the two plans.

In view of the foregoing, we have elected to pursue a course of action which will not disrupt the 1972 election process already under way in accordance with our election laws. Although constitutionally infirm, we hold that the primary and general elections for the Vermont Senate this year may be held under the plan set forth in S. 177. However, we also hold that no further elections may be had under S. 177.

Notwithstanding the constitutional infirmities of S. 177, in that the impending primary election is imminent and the senate's election machinery is already in progress, equitable consideration justifies the holding of the impending election as set forth under S. 177, even though this apportionment scheme does not meet constitutional standards. In so doing. we not only consider the forthcoming elections, the mechanics. and perplexities of state laws, and the continuity of government, but also rely upon general equitable principles. This view is supported by *Reynolds* v. *Sims*, 377 U.S. 533, 585 (1964) ; *Kilgarlin* v. *Hill*, 386 U.S. 120, 121 (1967). See especially *Buckley* v. *Hoff*, 234 F.Supp. 191, 199 (D. Vt. 1964), *aff'd sub nom. Parsons* v. *Buckley*, 379 U.S. 359, 362, 363 (1965), wherein the Court, in part, stated:

> ". . . even though we have found that this General Assembly is invalidly apportioned, we are permitted to act equitably and in accord with general equitable prin-

ciples to avoid too much sudden disruption of the State's political way of life."

■ It is readily apparent that in order for the Vermont Senate to be apportioned according to the Equal Protection Clause and the so-called "one-man, one-vote" principle as set forth in *Baker* v. *Carr*, 369 U.S. 186 (1962), and applied in the decisions following it, the county lines will have to yield to this Federal constitutional requirement for the purpose of the election of Senators to the Vermont General Assembly. *Scrimminger* v. *Sherwin*, 60 N.J. 483, 291 A.2d 134 (1972). Notwithstanding the mandate of the Vermont Constitution, Chapter II § 18, we so hold.

It is acknowledged in the hereinbefore quoted plan submitted by the board and the accompanying dissents together with the letter of transmittal by the chairman of the board that additional hearings are necessary for the board to satisfactorily explore, further consider, and make appropriate recommendations to the legislature which are consistent with constitutional requirements.

■ Moreover it is recognized that legislative reapportionment is primarily a matter for legislative consideration and determination. *Reynolds* v. *Sims, supra,* 377 U.S. at 586; *Mikell* v. *Rousseau,* 123 Vt. 139, 147, 183 A.2d 817 (1962).

Considering the facts in the case and the complex problems involved, it is our judgment that the legislature should be afforded the opportunity to reapportion the senate seats in accordance with constitutional standards.

*The 1972 elections are allowed to be held under S. 177, now Public Law No. 248 of the Public Acts of the 1971 Adjourned Session of the Vermont General Assembly. No further elections may be held under S. 177.*

*The matter of reapportionment is recommitted to the Legislative Apportionment Board with directions that it further consider a plan or plans of reapportionment and submit the same to the General Assembly when it convenes for its 1973 session which shall adopt an apportionment plan not later than June 30, 1973.*

*This Court will retain jurisdiction for all purposes.*

NOTE: We are authorized to say that Justice Barney joins in the disposition of this case on the authority of *Reynolds* v. *Sims,* 377 U.S. 533 (1964), and *Wells* v. *Rockefeller,* 394 U.S. 542, 547 (1969).